Filed 3/5/24  P. v. Lopez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FERNANDO MATEO LOPEZ,<br><br>    Defendant and Appellant. | H050242<br>(Santa Clara County<br>Super. Ct. No. C1119504) |

This matter is one of two pending appeals from defendant Fernando Mateo Lopez, who was convicted in 2016 of second degree murder, multiple counts of attempted murder, and multiple counts of shooting at an inhabited dwelling.  All counts related to a single drive-by shooting.  He petitioned for resentencing under former Penal Code section 1170.95 (now Penal Code section 1172.6).  The trial court denied the petition without an evidentiary hearing because it concluded defendant was ineligible for relief under that statute as a matter of law.[1]

Defendant argues on appeal that the trial court should have issued an order to show cause because an ambiguity in the jury instructions at defendant's trial created the possibility that the jury found him guilty of murder and attempted murder by imputing malice to him based solely on his participation in a crime.  The trial court correctly

---

[1]  In defendant's other appeal (case No. H050372), which we dispose of by separate opinion, defendant challenges the jury's true findings on gang and firearm allegations under Penal Code section 186.22 based on statutory changes in Assembly Bill No. 333 (Stats. 2021, ch. 699, § 3) that apply retroactively.

concluded defendant is ineligible for relief as a matter of law for his attempted murder convictions. But we will reverse the judgment and remand the matter for an evidentiary hearing about defendant's second degree murder conviction because he demonstrated prima facie eligibility for relief.

## I. TRIAL COURT PROCEEDINGS

Our court's 2020 opinion in defendant's direct appeal accurately summarized the background and charges in the case: "Defendant and four companions drove by a group of teenagers gathered in front of an apartment complex. They fired into the group, killing a 14-year-old girl and injuring three other teens. After a preliminary hearing, defendant and Ricardo Salvador Diaz were charged by information with: one count of special circumstances murder (Pen. Code, §§ 187, 190.2, subd. (a)(21)–(22); count 1); five counts of attempted murder with premeditation (Pen. Code, §§ 187, 189, 664, subd. (a); counts 2 – 6); and three counts of shooting at an inhabited dwelling (Pen. Code, § 246; counts 7 – 9). All counts were alleged to have been committed for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(4), (5)), and during which a principal intentionally used a firearm (an SKS assault rifle) to inflict great bodily injury or death on a person other than an accomplice (Pen. Code, § 12022.53, subds. (d), (e)(1))." (*People v. Lopez* (June 17, 2020, H043949) [nonpub. opn.].)[2]

Relevant to defendant's arguments in this appeal, the jury was instructed on aiding and abetting liability with CALCRIM No. 400: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator." The jury was also instructed with CALCRIM No. 401: "To prove that a defendant is guilty of a crime based on aiding and

---

[2] We have taken judicial notice of the records in case Nos. H043949 and H050372.

abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone *aids* and *abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

The jury was instructed on murder with CALCRIM No. 520: "To prove that a defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant committed an act that caused the death of another person; [¶] AND [¶] 2. When the defendant acted, he had a state of mind called malice aforethought. [¶] There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. [¶] The defendant acted with *express malice* if he unlawfully intended to kill. [¶] The defendant acted with *implied malice* if: [¶] 1. He intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for human life."

The jury was instructed on two theories of first degree murder: premeditation and murder by shooting a firearm from a vehicle. (CALCRIM No. 521.) The jury was instructed that the second theory has three elements: defendant "shot a firearm from a motor vehicle"; defendant "intentionally shot at a person who was outside the vehicle"; and defendant "intended to kill that person." The jury was instructed with CALCRIM No. 702 that even if defendant was not the actual killer he could be found guilty of first degree murder as an aider and abettor of murder by shooting a firearm from a vehicle if "defendant acted with the intent to kill."

3

As to attempted murder, the jury was instructed with CALCRIM No. 600: "To prove that a defendant is guilty of attempted murder, the People must prove that: [¶] 1. The defendant took at least one direct but ineffective step toward killing another person; [¶] AND [¶] 2. The defendant intended to kill that person." The jury was not instructed on the natural and probable consequences doctrine or felony murder.

The jury acquitted defendant of first degree murder on count 1 and convicted him of the lesser included offense of second degree murder. The jury also convicted defendant of attempted murder on counts 2 through 6; it found premeditation allegations not true. And the jury convicted defendant on counts 7 through 9 as charged. Gang and firearm allegations were found true as to all counts. The judgment was conditionally reversed in 2020 for the limited purpose of allowing the trial court to exercise its then-newly granted discretion to determine whether to strike the Penal Code section 12022.53 enhancements. (*People v. Lopez* (June 17, 2020, H043949) [nonpub. opn.].)

Defendant petitioned pro se for resentencing under Penal Code section 1172.6 resentencing in May 2022. He stated in the petition that he was "not the actual shooter [and] was only a pas[se]nger in the car"; that he "did not act with reckless indifference to human life"; and that he "did not aid and abet[] the shooting."

The trial court denied defendant's petition by written order without issuing an order to show cause. The court concluded that defendant was the actual shooter, apparently based on the Penal Code section 12022.53 enhancement to the second degree murder conviction and a misapprehension that "the jury was not instructed with aiding and abetting liability." The court also found that defendant "was not and could not have been convicted of murder or attempted murder under the natural and probable consequences or felony murder doctrines as the jurors were not instructed" about either theory.

4

## II.    DISCUSSION

A person convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime," or "attempted murder under the natural and probable consequences doctrine," may petition under Penal Code section 1172.6 to have those convictions vacated when certain conditions are satisfied.  (Pen. Code, § 1172.6, subd. (a).  Unspecified statutory references are to this code and section.)  An order to show cause must issue if a petitioner makes a prima facie case for relief. (§ 1172.6, subd. (c).)  The "parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case." (*People v. Lewis* (2021) 11 Cal.5th 952, 972.)  The court must take the petitioner's factual allegations as true and make a preliminary assessment about whether the petitioner would be entitled to relief if his or her factual allegations were proved.  (*Id*. at p. 971.)  But if the record contains facts refuting the allegations in the petition, the court must deny the petition.  (*Ibid.*)

### A.  PRIMA FACIE ELIGIBILITY AS TO THE SECOND DEGREE MURDER CONVICTION

Defendant relies on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*).  Langi was convicted of second degree murder for participating in a fistfight where someone in his group punched the victim who fell and hit his head, resulting in death.  (*Id.* at p. 975.) Langi's jury was not instructed on the natural and probable consequences doctrine, but Langi argued that the pattern aiding and abetting and second degree murder instructions "permitted the jury to find him guilty on a theory under which malice was imputed to him based solely on his participation in the crime." (*Id.* at p. 980.)  The *Langi* court reasoned that the "instructions permitted the jury to find [Langi] guilty of murder if it found that (1) the killing resulted from the actual killer's intentional act; (2) appellant aided and abetted that intentional act; and (3) the killer 'deliberately performed [the act] with knowledge of the danger to, and with conscious disregard for, human life'—whether or

5

not *appellant* knew of or consciously disregarded the danger to human life." (*Id.* at p. 981.) The court concluded that "under the instructions that were given, the jury was entitled to conclude that, to be guilty as an aider and abettor of second degree murder, appellant need only have intended to encourage the perpetrator's intentional act—[there], punching [the victim]—whether or not [Langi] intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Id.* at p. 983.) As a result, section 1172.6 relief was not precluded as a matter of law, and the *Langi* court concluded an order to show cause must issue.

Similar to *Langi*, the instructions in defendant's trial allowed the jury to convict him of second degree murder on an aiding and abetting theory without finding that he personally harbored express or implied malice. CALCRIM No. 520 informed the jurors that they could find the direct perpetrator acted with implied malice if: "1. He intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for human life." CALCRIM No. 401 defined the intent elements for aiding and abetting liability as follows: "The defendant knew that the perpetrator intended to commit the crime"; and "Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime." The instructions did not further explain that to be guilty as a direct aider and abettor of second degree murder, defendant must have aided the perpetrator's commission of the life-endangering act while personally harboring the mental state of express or implied malice. Consistent with the analysis in *Langi*, we find that defendant's jury was entitled to conclude that, to be guilty as an aider and abettor of second degree murder, defendant need only have intended to encourage the perpetrator's intentional act—in this case, shooting into an inhabited building—whether or not defendant intended to aid or encourage the victim's killing, and whether or not defendant personally knew of and disregarded the risk of such a killing. Because the *record of*

6

*conviction* does not conclusively negate the possibility the jury found defendant guilty of second degree murder by imputing to him the implied malice of the actual killer, an evidentiary hearing is required.

The Attorney General argues that defendant is not entitled to relief based on *People v. Coley* (2022) 77 Cal.App.5th 539 (*Coley*), which distinguished *Langi*. Coley was convicted of second degree murder and attempted murder after two men walking along a highway were fired upon from a car occupied by Coley and others. (*Id.* at p. 542.) The jury was not instructed on felony murder or the natural and probable consequences doctrine. (*Ibid.*) The *Coley* court distinguished *Langi*, reasoning that the circumstances there involved implied malice murder, while Coley's "conviction for attempted murder demonstrates that he was convicted of second degree murder with express rather than implied malice" because the attempted murder instruction required a determination that the defendant intended to kill the victim. (*Coley*, at p. 547.)

As in *Coley*, defendant was convicted of second degree murder and attempted murder arising from a single drive by shooting. But we decline to apply the *Coley* court's reasoning that the jury's determination that Coley intended to kill the attempted murder victim necessarily meant the jury also found he intended to kill the murder victim. Under the instructions provided here, a reasonable juror could have found defendant intended to kill some, but not all, of the victims. Indeed, such a finding would be consistent with the jury's decision to acquit defendant of first degree murder based on the theory of shooting a firearm from a vehicle, an element of which was that defendant "intended to kill that person." We acknowledge that victim-specific parsing by jurors is unlikely, but it is not legally impossible. Because section 1172.6 relief is not precluded as a matter of law, defendant is entitled to an evidentiary hearing as to the murder conviction.

The Attorney General would distinguish *Langi* because Langi aided and abetted a punch whereas here the charged crimes were murder, attempted murder, and shooting into an occupied building. The Attorney General contends the second degree murder

conviction here necessarily included a finding that defendant "aided and abetted the dangerous act of shooting at the victims, and therefore, personally committed second degree murder." But as we have explained, the aiding and abetting instructions did not specify that defendant must have aided the perpetrator's commission of the life-endangering act while *personally* harboring the mental state of express or implied malice. The instructions allowed the intent element to be satisfied based merely on establishing defendant's intent to aid in the shooting.

## B. PRIMA FACIE ELIGIBILITY AS TO THE ATTEMPTED MURDER CONVICTIONS

Defendant contends the reasoning of *Langi* extends to his attempted murder convictions. We disagree for two reasons. First, by its very terms section 1172.6, subdivision (a) applies only to attempted murder convictions that are based on a natural and probable consequences theory. That subdivision provides potential resentencing for persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" and for persons convicted of "*attempted murder under the natural and probable consequences doctrine*." (§ 1172.6, subd. (a), italics added.) The jury here was not instructed on the natural and probable consequences doctrine, precluding relief as to defendant's attempted murder convictions. (Accord, *Coley*, *supra*, 77 Cal.App.5th at p. 548.)

Second, even if section 1172.6 relief were potentially available, the jury here necessarily concluded defendant harbored express malice toward the attempted murder victims: The jury instruction on attempted murder required a finding that the perpetrator "intended to kill" the victim when performing a direct but ineffective step toward killing. As to aiding and abetting liability, the jury was instructed that someone "*aids* and *abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." There is no ambiguity in the instructions about

8

the crime defendant was aiding and abetting. The jury necessarily concluded defendant specifically intended to assist the perpetrator in attempting to kill the victims while the perpetrator harbored an intent to kill those victims. Therefore the record of conviction here shows the jury necessarily convicted defendant on the attempted murder counts based on express malice.

Finally, we note the trial court's alternative finding that defendant was the actual shooter is not supported by the record of conviction. The jury found true the allegations that (1) a principal intentionally used a firearm to inflict great bodily injury or death and (2) the crimes were committed for the benefit of a criminal street gang. (Pen. Code, §§ 12022.53, subds. (d), (e)(1); 186.22, subd. (b)). As the Attorney General acknowledges, neither finding includes a determination that defendant was the actual shooter. But this error does not require reversal as to the attempted murder convictions because, as we have explained, those convictions show he was necessarily found to have committed attempted murder with the intent to kill.

### III.  DISPOSITION

The order denying the Penal Code section 1172.6 petition is reversed. The matter is remanded to the trial court with instructions to issue an order to show cause and conduct further proceedings under Penal Code section 1172.6 as to defendant's second degree murder conviction. Defendant is not entitled to relief as to his attempted murder convictions.

9

_____

Grover, Acting P.J.

**WE CONCUR:**

_____

Lie, J.

_____

Bromberg, J.

H050242
*The People v. Lopez*